**WATSON & CHALIN MANUFACTURING, INC., Plaintiff,**

v.

**THE BOLER COMPANY, Defendant.**

**Case No. 4:01–CV–144.**

United States District Court,
E.D. Texas,
Sherman Division.

Oct. 31, 2002.

---

Robert M. Parker, Tyler, TX, for Mediator.

Paul Talmage Boston, Jr., Winstead Sechrest & Minick, Dallas, TX, Robert C Shaddox, Charles J. Rogers, Winstead Sechrest & Minick, Houston, TX, for Plaintiff.

Joseph W. Wolfe, Wolfe Clark Henderson & Tidwell, Sherman, TX, Andy Wade Tindel, Attorney at Law, Tyler, TX, Mark J. Skakun, Buckingham Doolittle & Burroughs LLP, Akron, OH, for Defendant.

Mark J Skakun, Buckingham Doolittle & Burroughs LLP, Akron, OH, for Counter–Claimant.

Charles J. Rogers, Winstead Sechrest & Minick, Houston, TX, for Counter–Defendant.

## MEMORANDUM OPINION AND ORDER

LEONARD DAVIS, District Judge.

On September 10, 2002, the court conducted a claim construction hearing in this matter. After considering the submissions of the parties and arguments of counsel, the court issues the following order construing the claims of the patent-in-suit.

## BACKGROUND

Plaintiff Watson and Chalin Manufacturing, Inc. ("Watson") accuses Defendant The Boler Company ("Boler") of infringing claims 17 and 18 contained in United States Patent 5,865,452 ("the '452 patent"). The abstract of the '452 patent states that the patent discloses "an improved steerable suspension system." The abstract goes on to state that "[i]n a preferred embodiment, a steerable suspension system has a device attached to opposite ends of a tubular axle. The device includes a number of interconnected plates which cooperate to form an axle seat, and to which a king housing portion is attached." Claims 17 and 18 read as follows:

17. A steerable suspension system, comprising:

a generally tubular axle having opposite ends; and

a device attached to each of said axle opposite ends, said device including a king pin housing configured for receipt of a king pin therein, an axle seat complementary shaped relative to said axle, and a plurality of interconnected plates, said plates being attached to said king pin housing and said axle.

18. The steerable suspension system according to claim 17, wherein said plurality of plates includes first and second side plates and an inner plate, said inner plate having a profile formed thereon, said profile being complimentarily (sic) shaped relative to said axle, and said first and second side plates and said profile cooperating to form said axle seat.

The primary focus of the parties' is on the proper interpretation of the term "axle

seat" and of claim limitations that depend on that term. Watson proposes that the appropriate definition of the term "axle seat" is "the portion of the device in contact with the outer surface of the axle."[1] Watson argues that such an interpretation is consistent with the structure and context of the asserted claims. Boler contends that Watson's proposed interpretation is inconsistent with, among other things, the specification of the '452 patent, the prosecution history of the '452 patent, the meaning of the term as understood in the trucking industry, and the deposition testimony of the inventor of the device disclosed in the '452 patent. Boler asserts that the ordinary meaning of the term "axle seat" is a "mounting member that is a component of the suspension system, and that connects the suspension system to the axle." Boler proposes that the term be construed as "a portion of the suspension system for attaching the suspension components to the axle."

### LEGAL PRINCIPLES

■ Claim construction is a question of law. *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 979 (Fed.Cir.1995), *aff'd,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). In *Hockerson–Halberstadt, Inc. v. Avia Group Int'l, Inc.,* 222 F.3d 951 (Fed.Cir.2000), the Federal Circuit explained the parameters of claim construction analysis:

> Proper claim construction entails an analysis of a patent record's intrinsic evidence—the claim language, the written description and the prosecution history. If the meaning of a claim is unambiguous from the intrinsic evidence, then a court may not rely on extrinsic evidence for purposes of claim construction.

Claim construction analysis begins with the claim language itself. As a starting point, the court gives claim terms their ordinary and accustomed meaning as understood by one of ordinary skill in the art.

The claim term's ordinary and accustomed meaning initially serves as a default meaning because the patentee may act as a lexicographer and ascribe a different, or modified, meaning to the term. The court, therefore, must examine a patent's specification and prosecution history to determine whether the patentee has given the term an unconventional meaning. If the patentee has not done so, the term's ordinary and accustomed meaning controls.

*Id.* at 955.

### THE MEANING OF THE TERM "AXLE SEAT"

*The Claim Language*

The court begins, as it must, with the claim language itself. *Bell Comm'ns Research, Inc. v. Vitalink Comm'ns Corp.,* 55 F.3d 615, 619 (Fed.Cir.1995). To support its proposed definition of "axle seat," Watson argues that the grammatical structure of claim 17 reveals that the "axle seat" is included in the device (a structure to be attached to the ends of the axle). Watson points out that there is no mention of any suspension system component to which this "axle seat" might be connected or a part of, such as a spring or suspension arm. Further, Watson contends that the claim describes the "axle seat" in terms of its shape relative to the axle, thus suggesting its connectivity to the axle. Watson also argues that the grammatical structure of claim 18 suggests the formation of the

---

1. The parties' interpretations of the claim terms are taken from comparative charts each party filed after the Markman hearing.

"axle seat" through the cooperation of side plates and a profile shaped to form a connection with the axle. Watson asserts that no other component of the suspension system is mentioned as a limitation to this claim.

In response, Boler argues that Watson's proposed definition is contrary to the definition one skilled in the art would attribute to the term. To support this contention, Boler cites expert affidavits and publications of organizations in the trucking industry. Boler contends, essentially, that while a patent applicant is free to define a term differently from how one skilled in the art would understand it, Watson failed to attribute a special definition to "axle seat" in the '452 patent. Thus, Boler's argument continues, "axle seat" must be given its ordinary meaning: "a portion of the suspension system for attaching the suspension components to the axle."

■ As Watson points out, however, the problem with Boler's argument is that, rather than looking to the claim language first and then other intrinsic evidence to interpret the term, Boler looks first to extrinsic evidence for the meaning of a claim term and then imposes that meaning on the claims. "Relying on extrinsic evidence is 'proper only when the claim language remains genuinely ambiguous after consideration of the intrinsic evidence.' Such instances will rarely, if ever, occur." *Interactive Gift Express, Inc. v. Compuserve, Inc.,* 256 F.3d 1323, 1332 (Fed.Cir. 2001) (quoting *Bell & Howell Document Mgmt. Prods. Co. v. Altek Sys.,* 132 F.3d 701, 706 (Fed.Cir.1997)); *see Key Pharms v. Hercon Labs. Corp.,* 161 F.3d 709, 716 (Fed.Cir.1998) ("[I]f the meaning of the disputed claim term is clear from the intrinsic evidence—the written record—that meaning, and no other, must prevail; it cannot be altered or superseded by witness testimony or other external sources simply because one of the parties wishes it

were otherwise"); *Vitronics Corp. v. Conceptronic Inc.,* 90 F.3d 1576, 1583 (Fed. Cir.1996) ("In most situations, an analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed claim term."). "[E]xtrinsic evidence may never be used 'for the purpose of varying or contradicting the terms in the claims.'" *Interactive Gift Express,* 256 F.3d at 1332 (quoting *Markman,* 52 F.3d at 976).

While the court does not disagree that the term "axle seat" has been attributed the meaning Boler proposes in prior art suspension systems, the court sees no reason why, in light of the intrinsic evidence, one skilled in the art would not attribute Watson's proposed meaning to the term as used in the '452 patent. Put differently, contrary to Boler's assertion that Watson did not attribute a special meaning to the term, the court concludes that it did. The claim language itself does not limit the "axle seat" to a structure for attaching suspension components to an axle. As will be discussed in more detail below, the remaining intrinsic evidence—the specification and the prosecution history—also supports Watson's proposed definition of "axle seat."

*The Specification of the '452 Patent*

The specification contains a written description of the invention, and of the manner and process of making and using it, so as to enable a person skilled in the art to which it pertains to make and use the invention. 35 U.S.C. § 112. Boler argues that the specification describes the "axle seat" in the '452 patent as attaching a suspension component to the axle. Col. 3, line 59–Col. 4, line 19. Further, Boler contends that Figures 1A,1B and 2 in the '452 patent show the "axle seat" as attaching an air spring, i.e., a suspension component, to the axle. The section titled "Brief Description of the Drawings" in the '452 patent describes Figures 1A and 1B as

views of "a steerable axle system" and Figure 2 as a view of "a typical steerable suspension system." This section goes on to describe Figure 3 as a view of "a steerable suspension embodying principles of the present invention." Further, immediately after the portion of the specification cited by Boler, the specification states "[r]eferring additionally now to FIGS. 3 & 4, an improved steerable axle system [ ] embodying principles of the present invention is representatively illustrated." Thus, it is clear that the portion of the specification cited by Boler and Figures 1A, 1B and 2 concern prior art suspension systems which do not incorporate the claimed invention.

It is undisputed that the prior art suspension systems shown in Figures 1A, 1B and 2 and discussed in the specification have connections from the axle tube to the suspension components. The invention described in the '452 patent creates a new end device that also connects to the axle. Watson argues that it is appropriate for the term "axle seat" to refer to both the device connection point and the suspension connection point. The court agrees.

The specification describes the axle seat as follows:

> The device includes a king pin housing portion and an axle seat portion. The king pin housing portion and axle seat portion are combined by a unique construction and arrangement of a top plate, an outer plate, opposing side plates and the inner plate. The plates and the king pin housing portion are attached to each other as shown by conventional methods, such as by welding to thereby provide a generally hollow box-like assembly ... Inner side surfaces of the side plates are complimentarily shaped relative to the outer side surface of the axle and the inner plate formed

> therein, which is also complimentarily shaped relative to the outer side surface thereby forming the internal axle seat ... Each of the plates is attached to the axle as shown by conventional methods, such as by welding the plates to the axle, but it is to be understood that the axle seat portion may be other wise attached to the axle ... (figure references omitted)

Nowhere in this language is there any reference to the axle seat connecting suspension components. Instead, the specification describes the axle seat as a point of connection between the end device and the axle.

### The Prosecution History of the '452 Patent

The '452 patent application as originally filed contained 19 claims. On July 17, 1998, the patent examiner issued an Office Action allowing claims 10–12, rejecting claims 1–9 and 13–16, and objecting to claims 17–19. Watson[2] amended claim 17 to satisfy the examiner's objection to claims 17–19.

The examiner initially rejected claims 13–16 as being anticipated by U.S. Patent No. 4,733,744 issued to Jack Glaze. In response to the rejection of claims 13–16, Watson amended claim 16 to recite that the "king pin housing and said axle seat being integrally formed." In its remarks to the examiner, Watson stated the following:

> In contrast, Glaze does not show, describe, or suggest a device including an integrally formed king pin housing and axle seat, nor does Glaze disclose attaching such a device to a tubular axle. Instead, Glaze discloses a yoke or king pin housing, which is attached to axle tube 22, and a pivotable spring mounting

---

**2.** The court recognizes that Thomas Chalin was actually the applicant but for ease of reference the court will refer to the applicant in this opinion as Watson.

device, which is separately attached to the axle with flange members. The yoke is separate from the spring mounting device and flange members, and is separately attached to the axle.

Thus, the yoke, spring mounting device and flange members are not included in a single device attached to each end of an axle and are not integrally formed. (figure references omitted)

Boler argues that these remarks show that Watson considered the "pivotable spring mounting device" an "axle seat," since it is "separately attached to the axle" and "separate from" the yoke. The court has noted previously, however, that Watson has acknowledged "axle seats" separate from the claimed end device in the prior art. This does not mean that Watson cannot use this term to describe the connecting point between the end device and the axle. The '452 patent discloses *a new invention.*

Boler also argues that the connection between the yoke and the axle described in the Glaze patent constitutes an "axle seat" under Watson's proposed definition. Thus, Boler asserts that had the term "axle seat" been given the meaning Watson proposes, Watson would not have been able to distinguish the claimed invention over the Glaze patent. Having reviewed Watson's remarks, the court concludes that Watson did not view the Glaze patent as disclosing an axle seat connection, or perhaps any connection, between the yoke and the axle tube. The specification in the Glaze patent states that "the outer end 22 is provided with an outboard yoke portion 120" thereby indicating a unitary design. Even if the Glaze design is not unitary and the yoke is somehow attached to the axle, Watson's remarks to the examiner make clear that, unlike Glaze, its application taught an *integrally formed king pin housing and axle seat.* In sum, Watson's remarks simply distinguish the integrally formed king pin housing and axle seat from Glaze's yoke and separate axle seat

(spring mounting device.) Accordingly, the court concludes that Boler has failed to show that Watson attributed a different meaning to "axle seat" than it does now.

The examiner also rejected claims 1–9 as being obvious in light of U.S. Patent 4,693,486 issued to William Pierce and U.S. Patent 1,890,766 issued to F.J. Adams. Boler argues that in its attempt to distinguish the '452 invention from the Pierce and Adams patents, Watson argued that neither Pierce of Adams taught an integrally formed kind pin housing and axle seat. The court agrees. Boler goes on to assert that by distinguishing the Pierce and Adams patents in this manner, Watson is now precluded from contending that an "axle seat" can attach anything to an axle. However, this definition is not the one Watson is proposing here, but rather is part of a definition put forth by Watson's patent attorney, Marlin Smith, in deposition testimony. Smith's testimony is extrinsic evidence which the court need not consider. Further, while an "axle seat" may be a structure that attaches something to an axle, Watson proposes that "axle seat" be defined, in relation to the '452 patent, as "the portion of the device in contact with the outer surface of the axle." Thus, Watson is not necessarily proposing that an axle seat be defined as a structure that attaches anything to an axle. It is simply saying that in construing the language in the '452 patent, the term "axle seat" should not be limited solely to "a portion of the suspension system for attaching suspension components to the axle."

*Conclusion from the Intrinsic Evidence*

■ Having reviewed the intrinsic evidence, the court concludes that the term "axle seat" is clear and unambiguous. Boler argues that the court should look to extrinsic evidence, such as the publications of organizations in the trucking industry,

the depositions of the inventor of the claimed device, Thomas Chalin, and the president of Watson and Chalin, Donald Watson, and the position of Watson in another case before this court, to interpret the term "axle seat" and other disputed terms contained in the claims at issue. Having concluded that the term "axle seat" is clear from the intrinsic record, the court will not resort to extrinsic evidence to interpret the disputed terms. Based on the intrinsic evidence, the court interprets "axle seat" as "the portion of the device in contact with the outer surface of the axle."

## CLAIM 17

The court now turns specifically to the interpretation of the terms in claim 17.

"A steerable suspension system, comprising:"

The parties agree that this element should be construed as "The improved steerable suspension system."

"a generally tubular axle"

The parties' interpretations vary to a slight degree. The court interprets this element as "the component of the suspension system that extends from side to side with a generally tubular cross-section configuration."

"having opposite ends; and"

The court construes this element as "having two ends, each opposite the other."

"a device"

The court adopts Watson's proposed definition of this element as "a structure to be attached to ends of axle that incorporate the king pin housing, axle seat and a plurality of interconnected plates."

"attached to each of said axle opposite ends"

■ Having reviewed the parties' proposed interpretations, the court interprets this element as "the device is fixedly at-tached to the axle by means such as welding, u-bolts, clamps, etc."

"said device including a king pin housing configured for receipt of a king pin there-in,"

The court interprets this element as "a structure having an opening through which a king pin may be installed and secured."

"an axle seat"

As discussed above, the court construes this element as "the portion of the device in contact with the outer surface of the axle."

"complementary shaped relative to said axle, and"

Having reviewed the parties' proposed interpretations, the court interprets this element as "the axle seat portion of the device is shaped to contact the outer surface of the axle."

"a plurality of interconnected plates"

■ The court's adopts Boler's definition of the element as "more than one plate attached together to form a structure that includes said axle seat."

"said plates being attached to said king pin housing and said axle."

The court interprets this element as "the plates are attached to the king pin housing and the axle by conventional means."

## CLAIM 18

"The steerable suspension system according to claim 17,"

Same as claim 17.

"wherein said plurality of plates"

The court construes this element "more than one plate attached together to form a structure that includes said axle seat."

"includes first [side plate]"

The parties' basically agree that this element should be construed as "a plate which forms the first side of the axle seat."

"and second side plates"

Again, the parties basically agree that this element should be construed as "a plate which forms the second side of the axle seat."

"and an inner plate"

The court construes this element as "a plate which, together with the side plates, forms a hollow box-like assembly."

"said inner plate having a profile formed thereon, said profile being complimentarily (sic) shaped relative to said axle"

Having reviewed the parties' proposed interpretations, the court interprets this element as "the inner plate having a profile shaped to conform with the outer surface of the axle."

"said first and second side plates and said profile cooperating to form said axle seat"

The parties basically agree that this element should be interpreted as "the assembly, formed by the side plates and inner plate profile, contacts the axle in such a manner as to form the axle seat."

## CONCLUSION

For the foregoing reasons, the court interprets the claim language in this case in the manner set forth above. For ease of reference, the court's interpretation of the claims is set forth in tabular form in Appendix A.

So **ORDERED** and **SIGNED** this _____ day of October, 2002.

## APPENDIX A

**Claim 17 of the '452 Patent:**

| Claim Language | Court's Interpretation |
|---|---|
| "A steerable suspension system, comprising" | "The improved steerable suspension system" |
| "a generally tubular axle" | "the component of the suspension system that extends from side to side with a generally tubular cross-section configuration" |
| "having opposite ends; and" | "having two ends, each opposite the other" |
| "a device" | "a structure to be attached to ends of axle that incorporate the king pin housing, axle seat and a plurality of interconnected plates" |
| "attached to each of said axle opposite ends" | "the device is fixedly attached to the axle by means such as welding, u-bolts, clamps, etc." |
| "said device including a king pin housing configured for receipt of a king pin therein" | "a structure having an opening through which a king pin may be installed and secured" |
| "an axle seat" | "the portion of the device in contact with the outer surface of the axle" |
| "complementary shaped relative to said axle, and" | "the axle seat portion of the device is shaped to contact the outer surface of the axle" |
| "a plurality of interconnected plates" | "more than one plate attached together to form a structure that includes said axle seat" |
| "said plates being attached to said king pin housing and said axle" | "the plates are attached to the king pin housing and the axle by conventional means" |

**Claim 18 of the '452 Patent:**

| Claim Language | Court's Interpretation |
|---|---|
| "The steerable suspension system according to claim 17" | Same as claim 17 |

| | |
|---|---|
| "wherein said plurality of plates" | "more than one plate attached together to form a structure that includes said axle seat" |
| "includes first [side plate]" | "a plate which forms the first side of the axle seat" |
| "and second side plates" | "a plate which forms the second side of the axle seat" |
| "and an inner plate" | "a plate which, together with the side plates, forms a hollow box-like assembly" |
| "said inner plate having a profile formed thereon, said profile being complimentarily (sic) shaped relative to said axle" | "the inner plate having a profile shaped to conform with the outer surface of the axle" |
| "said first and second side plates and said profile cooperating to form said axle seat" | "the assembly, formed by the side plates and inner plate profile, contacts the axle in such a manner as to form the axle seat" |